STANLEY WOOLEN COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 35912. Filed May 31, 1956.

*Edward C. Thayer, Esq.,* and *Howard V. Foulke, Esq.,* for the petitioner.

*William V. Crosswhite, Esq.,* and *John K. Barry, Esq.,* for the respondent.

OPINION.

Murdock, *Judge:* The petitioner seeks excess profits tax relief under section 722 (b) (2), Internal Revenue Code of 1939. It contends that its base period net income is an inadequate standard of normal earnings because of the loss of the services of its two established sales representatives in 1932 and its inability to replace them with capable representatives about the middle of the base period.

Its two principal salesmen, Frankenberg and Salomon, retired from the textile business in 1932 and terminated their services with the petitioner. The latter engaged a number of other agents from time to time, prior to and during the base period, but for one reason or another found them unsatisfactory. The petitioner contends that their failure to produce a profitable volume of sales was responsible for its base period losses and that, therefore, "the business of the taxpayer was depressed in the base period because of temporary economic circumstances unusual in the case of such taxpayer" within the meaning of section 722 (b) (2).

The petitioner proposes to reconstruct its base period income by adjusting base period sales to their relative position in the woolen industry prior to 1932. In this manner its average base period sales are increased 100 per cent, from $480,972 to $961,944, and its average base period net income from a loss of $13,068 to a net income of $53,417.

The petitioner sustained net losses in the first 2 base period years and it had net income in the last 2 years amounting to $17,527 in 1938 and $4,150 in 1939. It had sustained losses in every year prior to the base period, since 1928, with an average loss for the 7 years of over $33,000. Assuming, however, that the petitioner's business was depressed during the base period within the meaning of section 722 (b) (2), it is not at all clear from the evidence that this depression was due to the loss of the services of the sales agents, Frankenberg and Salomon. Frankenberg was the petitioner's sole selling agent from 1922 to 1927. Its sales averaged close to $1,000,000 a year for that period. Salomon began selling for the petitioner in 1927. He and Frankenberg were both selling for the petitioner during the years 1927, 1928, and 1929, and its sales fell off from $1,184,508 in 1927 to $797,245 in 1928, and $527,360 in 1929. The downward trend continued to $292,845 in 1932 although another agent, Exner & Fine, was added in 1930. There was a succession of agents after the services of Frankenberg and Salomon were terminated in 1932. There were 10 different agents over the period 1932–1940. Some of them served for only 1 or 2 years, some longer. There were as many as 5 or 6 agents in some of the years. They dealt in various types of fabrics and sold to manufacturers of different types of clothing. Prendergast, who began selling for the petitioner in 1938, handled goods for men's wear. He accounted for 34.97 per cent of the petitioner's sales in 1938, 85.49 per cent in 1939, 89.29 per cent in 1940 and 75.31 per cent in 1941.

The decline in the petitioner's production and sales from 1927 followed generally that of the woolen industry as a whole, although in some years there were unaccounted for variations. This may have

been due to the fact that the petitioner manufactured "fancy" goods. The evidence does not show that the petitioner's sales agents were responsible for those variations. Nor does it show that its production, or net income, would have followed any very different pattern, if over the 1932–1939 period the petitioner had retained the same agents or had been able to obtain other thoroughly capable and satisfactory agents. The petitioner's difficulties before and during the base period were apparently due more to changes in clothing trends and styles, the introduction of new fabrics, and the effect of supply and demand, than to the failure of its selling agents. There is little doubt that if there had been a market for the petitioner's goods in the base period its sales agents or its own officers would have been able to find it.

Nor is it clear that increased sales in the base period would have resulted in proportionately increased net income. The ratio of the petitioner's net income to sales has not followed a consistent pattern either before or during the base period.

The petitioner's excess profits credits, based on invested capital, are $26,711.90 in 1941 and over $30,000 for each of the other taxable years. The petitioner would have to establish a constructive average base period net income sufficient to convert its average base period net loss of approximately $13,000 into an average net income sufficient to produce excess profits credit greater than those computed under the invested capital method. The evidence affords no basis for such a reconstruction.

Reviewed by the Special Division.

*Decision will be entered for the respondent.*